## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

|  |  |  |
|---|---|---|
| NAVIENT SOLUTIONS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:17-cv-1178 (LMB/TCB) |
| | ) | |
| KROHN & MOSS, LTD, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## REPORT AND RECOMMENDATION

THIS MATTER comes before the Court on Plaintiff's Motion for Default Judgment

Against Defendants Johnson and National Consumer Advocates, Inc. (Dkt. 72). After no

representative for either defendant Doug Johnson or defendant National Consumer Advocates,

Inc., responded to Plaintiff's motion or appeared at the hearing on June 22, 2018, the matter was

taken under advisement.[1] For the reasons stated below, the undersigned U.S. Magistrate Judge

recommends that Plaintiff's Motion for Default Judgment be GRANTED IN PART and

DENIED IN PART.

### I. INTRODUCTION

#### A. Background

On October 18, 2017, Navient Solutions, LLC ("Plaintiff") filed this lawsuit against

Krohn & Moss, Ltd. ("K&M"), Adam Krohn ("Mr. Krohn"), Adam Hill ("Mr. Hill"), the Law

---

1. Relevant filings before the Court include the Complaint (Dkt. 1) ("Compl."), Plaintiff's
Motion for Default Judgment Against Defendants Johnson and National Consumer Advocates,
Inc. (Dkt. 72) ("Pl.'s Mot. Default J."), the Memorandum of Law in Support of Plaintiff's
Motion for Default Judgment Against Defendants Johnson and National Consumer Advocates,
Inc. (Dkt. 72-1) ("Pl.'s Mem. Supp."), the Declaration of Carl O. Cannon (Dkt. 72-2) ("Cannon
Decl."), and all attachments and exhibits submitted with those filings.

Offices of Ryan Lee, PLLC (the "Law Offices of Ryan Lee"), Ryan Lee ("Mr. Lee"), National

Consumer Advocates, Inc. ("NCAI"), Doug Johnson ("Mr. Johnson"), Michael B. Biancone

("Mr. Biancone"), MB Investments & Consulting, LLC ("MB Consulting"), and John Does #1-

20, (collectively "Defendants") alleging that Defendants engaged in acts that violated the

Racketeering Influenced and Corrupt Organizations Act ("RICO"), common law fraud, and

common law tortious inteference. Since the filing of the lawsuit, the Court has dismissed K&M,

Mr. Krohn, Mr. Hill, the Law Offices of Ryan Lee, Mr. Lee, Mr. Biancone, and MB Consulting

from Plaintiff's action, in accordance with various stipulations of dismissal. (Dkts. 66, 68, & 71.)

Plaintiff now seeks entries of default judgment against the remaining named defendants NCAI

and Mr. Johnson, jointly and severally, for $8,239,743.48. (Pl.'s Mot. Default J. at 1; Pl.'s Mem.

Supp. at 23-24.)

## B. Jurisdiction and Venue

Before the Court can render default judgment, it must have both subject-matter

jurisdiction and personal jurisdiction over the defaulting parties, and venue must be proper.

### 1. *Subject-Matter Jurisdiction*

The Court has subject-matter jurisdiction over the claims against NCAI and Mr. Johnson

in this lawsuit. A federal district court has original jurisdiction when an action involves a civil

action "arising under the Constitution, laws, or treatises of the United States." 28 U.S.C. § 1331.

In this case, Plaintiff asserts claims against NCAI and Mr. Johnson pursuant to RICO, a federal

statute. (Compl. ¶¶ 421-30, 441-51.) Accordingly, the Court has subject-matter jurisdiction over

the RICO claims against NCAI and Mr. Johnson. Further, a federal district court has

"supplemental jurisdiction over all other claims that are so related to claims in the action within

such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. §

2

1367(a). Accordingly, the Court has subject-matter jurisdiction over the fraud and tortious interference with contract claims against NCAI and Mr. Johnson, as the fraud and tortious interference with contract claims are related to the RICO claims to the point where all claims together are part of the same case or controversy.

## 2. *Personal Jurisdiction*

The Court has personal jurisdiction over NCAI and Mr. Johnson in this action pursuant to both the traditional personal jurisdiction analysis and personal jurisdiction as authorized by RICO.

In order for the Court to exercise personal jurisdiction, the standards of both federal due process and the forum state's long-arm statute and must be satisfied. See Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co., 682 F.3d 292, 301 (4th Cir. 2012). Federal due process permits personal jurisdiction where a defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). Virginia's long-arm statute, Virginia Code § 8.01-328.1, "extends the jurisdiction of its courts as far as federal due process permits." ePlus Tech., Inc. v. Aboud, 313 F.3d 166, 176 (4th Cir. 2002). With federal due process and Virginia's long-arm statute requiring the same standards, essentially only one personal jurisdiction inquiry is required. See id.  The inquiry to find personal jurisdiction requires either specific jurisdiction "based on conduct connected to the suit" or general jurisdiction based on "continuous and systematic" activities in the forum state. Tire Eng'g & Distrib., 682 F.3d at 301 (quoting ALS Scan, Inc. v. Dig. Serv. Consultants, Inc., 293 F.3d 707, 711 (4th Cir. 2002)). NCAI and Mr. Johnson participated in an elaborate scheme that targeted Plaintiff, a Virginia resident, by

3

referring student loan debtors to the law firms K&M and the Law Offices of Ryan Lee so the law firms may file lawsuits against Plaintiff as well as Mr. Johnson instructing student loan debtors on how to interact with Plaintiff. (Compl. ¶¶ 6, 43-44, 53-65, 68.) Therefore, NCAI and Mr. Johnson maintained sufficient contacts with Virginia based on conduct connected to this case for personal jurisdiction to be proper in Virginia courts, and so the Court has personal jurisdiction over NCAI and Mr. Johnson under the specific jurisdiction inquiry.

RICO has also authorized personal jurisdiction over NCAI and Mr. Johnson. As a federal statute, RICO authorizes personal jurisdiction in a judicial district over all defendants in a RICO action filed in that judicial district when one defendant "resides, is found, has an agent, or transacts his affairs" in that judicial district, provided that the exercise of jurisdiction comports with due process considerations. See 18 U.S.C. § 1965(a)-(b); ESAB Grp., Inc. v Centricut, Inc., 126 F.3d 617, 626 (4th Cir. 1997) ("Although 18 U.S.C. § 1965 is entitled 'Venue and process,' the fact that it also authorizes service of process makes it relevant to personal jurisdiction because of Federal Rule of Civil Procedure [4(k)(1)(C)]."). Even if NCAI and Mr. Johnson would not be considered to have transacted affairs in Virginia, K&M, another defendant in this case, has transacted affairs in Virginia. Specifically, K&M represented student loan debtors in a case that involved events taking place exclusively in the Eastern District of Virginia. (Compl. ¶¶ 24, 244-83.) Accordingly, because K&M, as one of the defendants, transacted its affairs in this Court's judicial district, personal jurisdiction can be properly exercised over all Defendants, including NCAI and Mr. Johnson. Further, for state law claims brought alongside a RICO action, a court may exercise personal jurisdiction over those state law claims "so long as the federal [RICO] claim is not wholly immaterial or insubstantial." ESAB Grp., 126 F.3d at 629. Therefore, this Court has personal jurisdiction over Plaintiff's state law claims for fraud and tortious

interference with contract because Plaintiff's RICO claims are not wholly immaterial or insubstantial.

### 3. *Venue*

Venue in this action is proper in this Court. For a RICO action, venue in a court is proper "for any district in which such person resides, is found, has an agent, or transacts his affairs." 28 U.S.C. § 1965(a). In this case, venue in this Court is proper because K&M, one of the Defendants, transacted its affairs in representing student loan debtors in the scheme to defraud Plaintiff, with all related events occurring in this Court's judicial district. (Compl. ¶ 24.)

### C. Service of Process

Before the Court can render default judgment, it must be satisfied that a defaulting party has been properly served. As a general rule, a defendant must be served with the summons and complaint filed with a federal court. See FED. R. CIV. P. 4. However, various avenues exist to serve a defendant.

In serving process to a corporation, a plaintiff may follow state law for service in the state where the district court overseeing the lawsuit sits. See FED. R. CIV. P. 4(e)(1), (h)(1)(A). Under Virginia law, if Virginia may exercise personal jurisdiction over a foreign corporation, a plaintiff may make service of process on the Secretary of the Commonwealth to serve that foreign corporation. See VA. CODE §§ 8.01-301(3), 8.01-329(A). To make service on the Secretary of the Commonwealth for a foreign corporation, a plaintiff must file an affidavit with the court providing the last known address of the party to be served and stating that the party to be served is a foreign corporation. See id. § 8.01-329(B). As previously stated, Virginia may exercise personal jurisdiction over NCAI in accordance with its long-arm statute, and NCAI is a foreign corporation. Accordingly, Plaintiff provided copies of the summons and complaint to the

Secretary of the Commonwealth, and Plaintiff also filed an affidavit with this Court providing

the last known address of NCAI and stating that NCAI is foreign corporation. (Dkts. 18 & 39.)

Therefore, service of process on NCAI was proper as Plaintiff served the Secretary of the

Commonwealth as an agent authorized to accept service by law for NCAI.

In serving process to an individual, a plaintiff may follow state law for service in the state

where the district court overseeing the lawsuit sits. See FED. R. CIV. P. 4(e)(1). Under Virginia

law, a plaintiff may make service on an individual in accordance with an order of publication.

See VA. CODE § 8.01-296(3). The order of publication may be entered against a nonresident

individual and shall provide information about the lawsuit, require the defendant to appear in the

case no sooner than fifty days after entry of the order of publication, and be published once each

week for four successive weeks in such newspaper prescribed by the court. See id. §§ 8.01-

316(1)(a); 8.01-317. On November 28, 2017, after considering a motion by Plaintiff, the Court

entered an order of publication, requiring that Plaintiff publish notice of this lawsuit for four

successive weeks in The Tennessean, with the notice to provide information about the lawsuit

and advising Mr. Johnson that he must response to the complaint within fifty days of the entry of

the order of publication. (Dkt. 19.) Plaintiff complied with the Court's order of publication and

arranged for appropriate publication in The Tennessean for four consecutive weeks. (Dkt. 43.)

Therefore, service of process on Mr. Johnson was proper as Plaintiff served Mr. Johnson in

accordance with Virginia law for service by publication.

### D. Grounds for Default Judgment

The entry of default judgment may be appropriate when a defendant has failed to appear

in a case. See FED. R. CIV. P. 55. To date, NCAI and Mr. Johnson have not appeared or otherwise

participated in these proceedings. On February 20, 2018, Plaintiff filed its Request for Clerk's

Entry of Default (Dkt. 59), seeking an entry of default for NCAI and Mr. Johnson. On February

23, 2018, the Clerk of the Court issued the Entry of Default (Dkt. 62) for Defendant. On May 17,

2018, Plaintiff filed its Motion for Default Judgment. The Court then held a hearing on

Plaintiff's Motion for Default Judgment on June 8, 2018, at which no representative for NCAI or

Mr. Johnson appeared. Finding the matter uncontested, the Court took the matter under

advisement to issue this Report and Recommendation.

## II. FINDINGS OF FACT

Upon a full review of the pleadings and the record in this case, the undersigned finds that

Plaintiff has established the following facts.

Plaintiff is a Delaware limited liability company with its principal place of business in

Reston, Virginia. (Compl. ¶ 6.) Plaintiff's sole member is Navient Corporation, a Delaware

corporation. (Id.) Plaintiff is in the business of servicing federal and private student loans,

serving a portfolio of more than $300 billion in various types of outstanding student loans for

more than twelve million customers. (Id. ¶¶ 6, 26.) When a customer falls behind on his or her

loan payments, Plaintiff may contact the customer or others associated with the customer's

account, in order to make the customers aware of their repayment options. (Id. ¶ 29.) Telephone

contact undertaken by Plaintiff is regulated by various state and federal laws, including the

federal Telephone Consumer Protection Act ("TCPA"). (Id. ¶ 32.) Specifically, the TCPA

restricts the manner in which Plaintiff can call customers using an automatic telephone dialing

system without the customer's express consent. (Id. ¶ 34.) The TCPA imposes $500 in statutory

damages for each call that violates TCPA requirements, with a court having the ability to

increase the damages for each call to $1,500 if the violation is willful or knowing. (Id. ¶ 35.)

NCAI is a California corporation with its principal place of business in Northridge,

California. (Id. ¶ 12.) Mr. Johnson is a natural person domiciled in the state of Tennessee. (Id. ¶ 13.) NCAI and Mr. Johnson, along with Mr. Biancone and MB Consulting, have advertised themselves as providing debt counseling and relief services to student loan debtors nationwide. (Id. ¶¶ 43, 49, 108-09.) When student loan debtors contacted them, Mr. Johnson, Mr. Biancone, and MB Consulting would direct student loan debtors to stop making payments on their loans to Plaintiff and instead pay an equivalent amount of money to NCAI on a monthly basis. (Id. ¶¶ 53-54, 110-15, 196-99, 286-89, 291-92, 320.) The student loan debtors were informed that the payments to NCAI would be placed in a client trust account that would be used to pay Plaintiff as the creditor, pay for the services of NCAI, and pay other costs and expenses. (Id. ¶¶ 54, 115, 290, 322-25.) However, NCAI did not use any portions of the payments it received to pay Plaintiff, and instead NCAI simply kept the full payments for itself. (Id. ¶ 55.) NCAI concealed this practice from the student loan debtors, which sometimes resulted in the student loan debtors' loans to become delinquent. (Id.)

Meanwhile, through telephone calls and emails, Mr. Johnson, Mr. Biancone, and MB Consulting would also direct the student loans debtors to contact Plaintiff and read a script. (Id. ¶¶ 56, 116-17, 123-24, 169-82, 200-01, 205-09, 248-50, 255-64, 293-97, 326-29, 356-57.) The script required the student loan debtor to confirm the name of the person he or she was speaking to, confirm the amount owed on his or her student loans, state "I ask that you please stop calling me and correspond with me in writing from this point forward," provide any or all of his or her telephone numbers, state "Also please do not call me at work because my employer prohibits me from receiving calls," and then provide his or her work telephone number. (Id. ¶¶ 56, 116, 124, 178, 209, 250.) Mr. Johnson, Mr. Biancone, and MB Consulting would advise the student loan debtors to provide as many phone numbers as possible to Plaintiff and to have any family

8

members or friends who had cosigned loans to call and read the script as well. (Id. ¶¶ 63-64, 121-23.) Once student loan debtors and others contacted Plaintiff and read the script, Mr. Johnson, Mr. Biancone, and MB Consulting would help the student loan debtors keep track of any calls received from Plaintiff, and equated each phone call with a value of $500 as a violation of the TCPA. (Id. ¶¶ 59, 62, 216-20, 270-72, 335-38.) Upon being informed of calls by student loan debtors, Mr. Johnson and Mr. Biancone themselves would sometimes also record such information on calls received into call logs. (Id. ¶¶ 59-61, 147.) When Plaintiff stopped making phone calls to a student loan debtor, the student loan debtor was advised to contact Plaintiff again to discuss his or her loans, with the purpose of causing Plaintiff to again begin calling the student loan debtor. (Id. ¶¶ 65, 126.) Mr. Biancone would also submit letters that he falsely represented to be from student loan debtors to Plaintiff, and the letters would contain incorrect information and demand certain action by Plaintiff, with the goal of having the letters spur Plaintiff to call the student loan debtors. (Id. ¶¶ 66, 135-45, 183-89, 210-15, 251-54, 265-69, 298-303, 330-34, 358-62, 409-11.) While providing such advice and services to student loan debtors, Mr. Johnson, Mr. Biancone, MB Consulting, and NCAI continually received payments from student loan debtors for the purpose of resolving the student loan debtors' debts. (Id. ¶ 68.) However, instead of the payments going toward resolving the student loan debtors' debts, Mr. Johnson, Mr. Biancone, MB Consulting, and NCAI kept the payments for themselves. (Id.)

When the total number of phone calls amounted to a potential TCPA statutory damages total sufficient to offset the student loan debtor's debt and provide for an adequate attorney fee, Mr. Johnson, Mr. Biancone, and MB Consulting would refer the student loan debtor to their attorney partners, including Mr. Krohn and Mr. Hill of K&M, and Mr. Lee, formerly of K&M, but who had since founded the Law Offices of Ryan Lee. (Id. ¶¶ 68-72, 148-49, 221, 339, 363.)

Upon referral, the attorneys initiated either a federal lawsuit or an arbitration alleging violations of the TCPA premised on the calls by Plaintiff. (Id. ¶¶ 73, 150, 190-92, 222-26, 273-75, 304, 340, 364-66.) The attorneys would actively conceal the involvement of NCAI, Mr. Johnson, Mr. Biancone, and MB Consulting, in the student loan debtors' cases, and likewise advise the student loan debtors to not provide information and lie under oath about the involvement of NCAI, Mr. Johnson, Mr. Biancone, and MB Consulting in their cases. (Id. ¶¶ 78-79, 90-92, 151-57, 227-35, 276-80, 305-10, 341-51, 367-75.) In settlements resulting from the TCPA lawsuits filed against Plaintiff, Plaintiff agreed to make certain cash payments and to cancel valid student loan debt as a condition of the settlements. (Id. ¶¶ 98, 100-01.)

K&M had various express, written agreements stating that when K&M achieved a settlement or judgment in favor of the student loan debtors, K&M was to remit a portion of those funds to NCAI for referral and other fees. (Id. ¶ 74.) NCAI maintained similar agreements with the Law Offices of Ryan Lee. (Id. ¶ 77.) Plaintiff had received letters from attorneys for NCAI stating that NCAI was due a portion of the settlement proceeds negotiated by K&M and stating that NCAI had a lien on such proceeds. (Id. ¶¶ 81, 407.) NCAI also filed notices of liens on settlement proceeds in federal court cases in which K&M represented individual student loan debtors against Plaintiff. (Id. ¶¶ 82, 398, 404.) In each of the cases, K&M moved to strike the liens. (Id. ¶¶ 85, 399, 405.) NCAI responded to the motions to strike by stating that K&M was only counsel in the case because of a nationwide referral scheme with Mr. Biancone and Mr. Johnson, and that K&M was aware that the student loan debtors had contracts with NCAI because K&M set up the referral scheme to create TCPA violations and then have the student loan debtors referred to them. (Id. ¶ 85.) NCAI also filed a lawsuit in California state court against Mr. Biacone, Mr. Johnson, K&M, and others, in which NCAI alleged that K&M had

10

failed to pay referral fees owed to NCAI. (Id. ¶¶ 86, 377.) In the lawsuit, Mr. Biancone, Mr.

Johnson, and K&M all responded jointly to NCAI's complaint. (Id. ¶¶ 8, 378.) In its third

amended complaint in the lawsuit, NCAI explicitly described the scheme amongst the

Defendants as working to have "violations" amassed until certain "criteria" were met so that

student loan debtors' debts could be relieved. (Id. ¶¶ 381-83.) NCAI included with its third

amended complaint pieces of information that revealed a relationship between NCAI, K&M, Mr.

Lee, Mr. Johnson, and Mr. Biancone. (Id. ¶¶ 388-94.) Mr. Biancone later appeared pro se and

admitted that he was affiliated with NCAI through a written agreement that provided he assist

NCAI with its debt relief service. (Id. ¶¶ 88-89.)

In the fall of 2016, a student loan debtor in a TCPA suit against Plaintiff initially

represented by K&M changed her attorney and entered into a nominal settlement with Plaintiff.

(Id. ¶¶ 93, 158.) The student loan debtor then submitted to a deposition in which she described

the full scope of nature of the scheme to manufacture TCPA claims operated by Defendants. (Id.

¶¶ 93, 159-66.) Plaintiff then uncovered evidence of the scheme itself through investigating the

many cases brought by Mr. Krohn, Mr. Hill, and Mr. Lee as attorneys with either K&M or the

Law Offices of Ryan Lee. (Id. ¶ 94.) Plaintiff identified which cases were part of the scheme by

Defendants due to shared elements such as student loan debtors reading from an identical script,

call logs that matched the format used by Mr. Biancone and Mr. Johnson, and letters that

appeared to be sent by Mr. Biancone impersonating student loan debtors. (Id.) Plaintiff

calculated that the lawsuits that were part of the scheme by Defendants have resulted in Plaintiff

paying not less than $1,147,603.86 in settlements, cancelling more than $1.1 million in valid

student loan debt as a condition to the settlements, and expending more than $500,000 in

attorney's fees to defend against the lawsuits. (Id. ¶¶ 98, 100-02, 420.)

## III. EVALUATION OF PLAINTIFF'S COMPLAINT

When a defendant has defaulted, the well-pleaded allegations of facts set forth in the plaintiff's complaint are deemed admitted. JTH Tax, Inc. v. Grabert, 8 F. Supp. 3d 731, 736 (E.D. Va. 2014) (citing Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001)). Before entering default judgment, however, the Court must evaluate the plaintiff's complaint to ensure that the complaint properly states a claim. GlobalSantaFe Corp. v. Globalsantafe.com, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003). As such, it is appropriate to evaluate Plaintiff's claims in its complaint against NCAI and Mr. Johnson against the standards of Federal Rule of Civil Procedure 12(b)(6), as well as the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires particularity for claims of fraud.

Plaintiff asserts that NCAI and Mr. Johnson are liable for RICO violations under 18 U.S.C. § 1962(c) and (d), as well as common law fraud and tortious interference. (Pl.'s Mem. Supp. at 9-23.) The Court first considers the RICO violations asserted against NCAI and Mr. Johnson, and then considers the common law claims asserted against NCAI and Mr. Johnson.

### A. RICO Violation Claims

Plaintiff asserts various RICO violations, specifically stating that Mr. Johnson is liable for violating 18 U.S.C. § 1962(c) and that both NCAI and Mr. Johnson are liable for violating 18 U.S.C. § 1962(d). (Pl.'s Mem. Supp. at 9-21.) Each RICO violation is addressed in turn.

#### 1. Violation of 18 U.S.C. § 1962(c) by Mr. Johnson

Plaintiff asserts that Mr. Johnson has violated 18 U.S.C. § 1962(c), in what is described as a substantive RICO violation. RICO provides that:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). Therefore, to assert a substantive RICO violation, a plaintiff must show that an enterprise that affected interstate or foreign commerce existed, that a defendant conducted or participated in the conduct of the enterprise's affairs, and that the defendant so participated by engaging in a pattern of racketeering activity in furtherance of the enterprise.

First, Plaintiff has established that an enterprise existed that affected interstate commerce. One type of enterprise under RICO is an association-in-fact enterprise, which is defined as having "at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." Boyle v. United States, 556 U.S. 938, 946 (2009). Plaintiff has established each of the three necessary structural features. First, Plaintiff has established that Defendants' enterprise had the purpose to recruit and receive payments from student loan debtors, manufacture TCPA claims against Plaintiff, and profit off of the resolution of such TCPA claims. (Compl. ¶¶ 1-2, 42-79.) Second, Plaintiff has established that Defendants, as those asserted to be associated with the enterprise, all maintained relationships with each other, as evidenced by their consistent referral process and their express individual agreements to assist each other in their roles in the enterprise, such as agreements to share profits from TCPA case settlements. (Id. ¶¶ 42-46, 52, 68-72, 74-77.) Third, Plaintiff has established sufficient longevity of the enterprise, as Plaintiff has asserted that Defendants had been working together to achieve their enterprise's purpose since 2014. (Id. ¶ 1.)  Plaintiff also clearly established that the enterprise impacted interstate commerce, as Plaintiff services student loan debtors nationwide, and the enterprise utilized student loan debtors from various states that were required to make payments to Plaintiff. (Id. ¶¶ 26, 43.)

Second, Plaintiff has established that Mr. Johnson conducted or participated in the

conduct of the enterprise's affairs. To be considered to have conducted or participated in the conduct of a RICO enterprise's affairs, a defendant must have "participated in the operation or management of the enterprise itself." Reves v. Ernst & Young, 507 U.S. 170, 183 (1993). Plaintiff has sufficiently established that Mr. Johnson participated in the operation and management of the enterprise at issue, as Mr. Johnson's own activities were in clear support of the enterprise through him recruiting and providing instruction to student loan debtors to begin to manufacture TCPA lawsuits. (Compl. ¶¶ 49-53, 56, 59-61, 68, 109-10, 116-19, 123, 146, 149, 174, 196-97, 205, 216-17, 247-48, 271, 286-87, 291-92, 297, 319, 335-36, 339, 355.)

Lastly to show Mr. Johnson has committed a substantive RICO violation, Plaintiff has established that Mr. Johnson has engaged in a pattern of racketeering activity in furtherance of the enterprise. RICO defines "racketeering activity" to include many state and federal crimes, including mail fraud and wire fraud. 18 U.S.C. § 1961(1). RICO defines a "pattern of racketeering activity" to require "at least two acts of racketeering activity" that occur within a ten-year period. Id. § 1961(5). The acts of racketeering activity must be "related," and they must "amount to or pose a threat of continued … activity." H.J., Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 239 (1989). Racketeering activities are related if they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." Id. at 240 (quoting 18 U.S.C. § 3575(e)). Racketeering activities amount to or pose a threat of continued activity when a plaintiff shows "continuity of racketeering activity, or its threat." Id. at 241. Plaintiff has established each requirement to show that Mr. Johnson has engaged in a pattern of racketeering activity in furtherance of the enterprise.

Plaintiff has established that Mr. Johnson committed at least two acts of racketeering

activity to show a pattern of racketeering activity. Specifically, Plaintiff has mostly clearly established that Mr. Johnson completed predicate acts of mail fraud and wire fraud.[2] Mail fraud requires (1) the existence of a scheme to defraud and (2) the use of, or causing the use of, mail in furtherance of the scheme. 18 U.S.C. § 1341; United States v. Pierce, 409 F.3d 228, 232 (4th Cir. 2005). Similarly, wire fraud requires (1) the existence of a scheme to defraud and (2) the use of, or causing the use of, a wire communication, such as a telephone, email, or internet communication, in furtherance of the scheme. 18 U.S.C. § 1343; United States v. Jefferson, 674 F.3d 332, 366 (4th Cir. 2012). To reiterate, Plaintiff has sufficiently established that a scheme existed to recruit and receive payments from student loan debtors, manufacture TCPA claims against Plaintiff, and profit off of the resolution of such TCPA claims. (Compl. ¶¶ 1-2, 42-79.) Further, for mail fraud, Plaintiff has sufficiently established that Mr. Johnson caused the use of mail to further the scheme by working in tandem with Mr. Biancone who had sent various letters to Plaintiff impersonating student loan debtors. (Id. ¶¶ 66, 135-45, 183-89, 210-15, 251-54, 265-69, 298-303, 330-34, 358-62, 409-11.) For wire fraud, Plaintiff has sufficiently established that Mr. Johnson caused the use of wire communications to further the scheme by encouraging various student loan debtors to call Plaintiff's representative via telephone. (Id. ¶¶ 56, 116-17, 123-24, 169-82, 200-01, 205-09, 248-50, 255-64, 293-97, 326-29, 356-57.) Plaintiff has established that these mail fraud and wire fraud acts all occurred within a ten-year period of time, as they took place from only 2014 on. (Id. ¶ 1.) Plaintiff has also established that mail fraud and wire fraud acts were related and posed a threat of continued activity, as the mail fraud and wire

---

2. Plaintiff also argues that, due to co-conspirator liability, Mr. Johnson is liable for the predicate acts of witness tampering that were completed by K&M. (Pl.'s Mem. Supp. at 12-13, 15-17.) However, because the Court finds that Plaintiff has clearly established that Mr. Johnson completed at least two predicate acts involving mail fraud and wire fraud, the Court need not specifically address such additional alleged predicate acts.

fraud acts were essential to the concerted manufacturing of TCPA lawsuits and were completed

in a systematic fashion to provide the necessary contact information of the student loan debtors

to form the basis for the TCPA violations. (Id. ¶¶ 56-68.)

Accordingly, Plaintiff has established that Mr. Johnson has committed a substantive

RICO violation pursuant to 18 U.S.C. § 1962(c).

2. *Violations of 18 U.S.C. § 1962(d) by NCAI and Mr. Johnson*

Plaintiff asserts that NCAI and Mr. Johnson have violated 18 U.S.C. § 1962(d), in what is

described as a conspiracy RICO violation. RICO provides that it shall be unlawful for any person

to conspire to violate any subsection of 18 U.S.C. § 1962, including subsection (c) which covers

substantive RICO violations. 18 U.S.C. § 1962(d). Therefore, a conspiracy RICO violation

involves a defendant knowingly agreeing that a conspirator, which may include the defendant

himself, will commit a substantive RICO violation. See Salinas v. United States, 522 U.S. 52,

63-64 (1997). To commit a conspiracy RICO violation, a defendant need only "adopt the goal of

furthering or facilitating the criminal endeavor," such as "by agreeing to facilitate only some of

the acts leading to the substantive offense." Id. at 65.

Plaintiff has established that NCAI and Mr. Johnson were part of a RICO conspiracy. As

previously stated when describing Mr. Johnson's substantive RICO violation, Plaintiff has

established that an enterprise that affected interstate or foreign commerce existed, that Mr.

Johnson conducted or participated in the conduct of the enterprise's affairs, and that Mr. Johnson

so participated by engaging in a pattern of racketeering activity via mail fraud and wire fraud in

furtherance of the enterprise. Therefore, Plaintiff has already established the requirements for a

substantive RICO violation, and Plaintiff has also further established that NCAI and Mr. Johnson

adopted the goal of furthering the enterprise's scheme and agreed to facilitate some of the acts

that led to Mr. Johnson's substantive RICO violation. Specifically, Plaintiff has shown that NCAI and Mr. Johnson, alongside others, divided up certain activities of the scheme and worked in tandem with each other with the ultimate goal to profit off of the windfalls that came from manufacturing TCPA lawsuits against Plaintiff, as shown by their consistent referral process and their express individual agreements to assist each other in their roles in the enterprise, such as agreements to share profits from TCPA case settlements. (Compl. ¶¶ 42-46, 52, 68-72, 74-77.) Accordingly, Plaintiff has established that NCAI and Mr. Johnson each committed RICO conspiracy violations pursuant to 18 U.S.C. § 1962(d).

### B. Common Law Claims

Plaintiff asserts that both NCAI and Mr. Johnson are liable for the common law torts of fraud and tortious interference in accordance with Virginia law. (Pl.'s Mem. Supp. at 21-23.) The common law fraud and tortious interference claims are before the Court due to its supplemental jurisdiction, and so the choice-of-law rules of the forum state apply. See Klaxon v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); ITCO Corp. v. Michelin Tire Corp., Commercial Div., 722 F.2d 42, 49 n.11 (4th Cir. 1983). For tort claims such as fraud and tortious interference, Virginia applies "the law of the state in which the wrongful act took place, wherever the effects of that act are felt." Milton v. IIT Research Inst., 138 F.3d 519, 522 (4th Cir. 1998). Because NCAI is a corporation headquartered in California, and because Mr. Johnson is a resident of Tennessee, it appears that the wrongful acts of both NCAI and Mr. Johnson took place NCAI's and Mr. Johnson's respective home states of California and Tennessee. Therefore, it is appropriate to analyze the claims for fraud and tortious interference in accordance with California law for NCAI and in accordance with Tennessee law for Mr. Johnson. This is so even though the effects of such torts may have been felt by Plaintiff at its principal place of business in Virginia. See id.

17

("[W]hen Virginia residents are victims of out-of-state torts, the Virginia courts routinely apply the law of other states, even though the physical pain or economic impact caused by the tort injury may be experienced by the Virginia plaintiffs within the boundaries of the Commonwealth."). As such, each common law claim is considered in turn below.

### 1. *Fraud Claim Against NCAI*

For a claim of fraud in accordance with California law, a plaintiff must prove (1) a misrepresentation by the defendant; (2) the defendant's knowledge of the falsity; (3) the defendant's intent to defraud;(4) the plaintiff's justifiable reliance, and (5) resulting damage to the plaintiff. See Small v. Fritz Cos., Inc., 65 P.3d 1255, 1258 (Cal. 2003). While Plaintiff has sufficiently established that NCAI took place in a generally fraudulent scheme that has made it liable for RICO violations, Plaintiff has failed to allege fraud by NCAI against Plaintiff in accordance with California law. Specifically, Plaintiff's allegations against NCAI contain no alleged misrepresentation that NCAI made to Plaintiff, and therefore Plaintiff's allegations contain no instances of Plaintiff justifiably relying on NCAI's misrepresentations. Accordingly, Plaintiff has failed to state a claim for fraud against NCAI, and default judgment against NCAI for fraud is not appropriate.

### 2. *Tortious Interference Claim Against NCAI*

For a claim of tortious inference in accordance with California law, a plaintiff must prove (1) a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of this contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) an actual breach or disruption of the contractual relationship; and (5) resulting damage. See Pac. Gas & Elec. Co. v. Bear Stearns & Co., 791 P.2d 587, 589-90 (Cal. 1990). Plaintiff has established that NCAI tortuously interfered with Plaintiff's contracts.

Plaintiff has sufficiently alleged that it had valid contracts with various student loan debtors to service their loan repayments. (Compl. ¶¶ 26-30.) Plaintiff has sufficiently alleged that NCAI knew of such contracts and intentionally acted to disrupt them by accepting payments by student loan debtors under the guise of an alternative way to pay Plaintiff, but by in fact keeping all payments for itself. (Id. ¶¶ 53-55.) Plaintiff has sufficiently alleged that such actions by NCAI resulted in actual breaches of Plaintiff's contracts with student loan debtors, as the student loan debtors would not make the contractually required payments to Plaintiff, which resulted in damages of Plaintiff not receiving payments it was entitled to. (Id. ¶ 55.) Accordingly, default judgment against NCAI for tortious interference is appropriate.

### 3. *Fraud Claim Against Mr. Johnson*

For a claim of fraud in accordance with Tennessee law, a plaintiff must prove (1) a representation of fact; (2) the representation was false when made; (3) the representation was in regard to a material fact; (4) the false representation was made either knowingly or without belief in its truth or recklessly; (5) the plaintiff reasonably relied on the misrepresented material fact; and (6) the plaintiff suffered damage as a result of the misrepresentation. See Walker v. Sunrise Pontiac-GMC Truck, Inc., 249 S.W.3d 301, 312 (Tenn. 2008). While Plaintiff has sufficiently alleged that Mr. Johnson, like NCAI, took place in a generally fraudulent scheme that has made him liable for RICO violations, Plaintiff has failed to allege fraud by Mr. Johnson against Plaintiff in accordance with Tennessee law. Like with Plaintiff's allegations against NCAI, Plaintiff's allegations against Mr. Johnson contain no alleged misrepresentation that Mr. Johnson made to Plaintiff, and therefore Plaintiff's allegations contain no instances of Plaintiff reasonably relying on such a misrepresentation by Mr. Johnson. In fact, the only misrepresentation to Plaintiff by any defendant engaged in the scheme's student loan debtor recruitment appears to be

19

the sending of letters to Plaintiff that impersonated student loan debtors. However, Plaintiff specifically alleged that only Mr. Biancone sent such false letters, even though Mr. Biancone and Mr. Johnson otherwise fulfilled similar roles in the scheme. Accordingly, Plaintiff has failed to state a claim for fraud against Mr. Johnson, and default judgment against Mr. Johnson for fraud is not appropriate.

### 4. *Tortious Interference Claim Against Mr. Johnson*

For a claim of tortious inference under Tennessee law, described as a procurement of a breach of contract, a plaintiff must prove (1) a legal contract for a designated term; (2) the defendant was aware of the contract; (3) the defendant maliciously intended to induce a breach of the contract; (4) the defendant proximately caused a breach of the contract; and (5) plaintiff was damaged as a result of the breach. See Forrester v. Stockstill, 869 S.W.2d 328, 330 (Tenn. 1994). Plaintiff has established that Mr. Johnson tortuously interfered with Plaintiff's contracts. Plaintiff has sufficiently alleged that it had legal contracts with various student loan debtors to service their loan repayments. (Compl. ¶¶ 26-30.) Plaintiff has sufficiently alleged that Mr. Johnson knew of such contracts and maliciously and intentionally acted to disrupt them by directing student loan debtors to not pay Plaintiff directly and instead pay NCAI under the guise of an alternative way to pay Plaintiff. (Id. ¶¶ 53-55.) Plaintiff has sufficiently alleged by such actions by Mr. Johnson proximately resulted in actual breaches of Plaintiff's contracts with student loan debtors, as the student loan debtors would not make the contractually required payments to Plaintiff, which resulted in damages of Plaintiff not receiving payments it was entitled to. (Id. ¶ 55.) Accordingly, default judgment against Mr. Johnson for tortious interference is appropriate.

IV. REQUESTED RELIEF

In requesting default judgment against NCAI and Mr. Johnson, Plaintiff seeks compensatory damages of $2,746,581.16 to be trebled threefold in accordance with RICO for a total amount of damages at $8,239,743.48. (Compl. at 61; Pl.'s Mem. Supp. at 23-24.) Despite initially requesting other forms of relief in its complaint, such as attorney's fees, Plaintiff is only seeking to recover the aforementioned compensatory damages trebled threefold and requests to waive its rights to attorney's fees under RICO. (Pl.'s Mem. Supp. at 23 n.5.)

RICO provides that "[a]ny person injured in his business or property by a violation of [RICO] ... shall recover threefold the damages he sustains and the cost of the suit." 18 U.S.C. § 1964. Plaintiff asserts that its damages are $2,746,581.16, made up of $1,279,603.86 in cash that Plaintiff has paid out in settlement and $1,466,977.30 that Plaintiff has credited in debt relief. (Pl.'s Mem. Supp. at 23-24.) Plaintiff has provided a declaration that supports the veracity of such numbers, including extensive records of its financial transactions related to the resolution of TCPA cases that were part of Defendants' scheme. (Cannon Decl. Exs. 1-2.)

Upon review, and upon finding it satisfactory that such damages calculations are correct, the undersigned finds that Plaintiff is entitled to a total amount of compensatory damages of $8,239,743.48 jointly and severally from NCAI and Mr. Johnson. The undersigned also accepts Plaintiff's waiver of its rights to recovery attorney's fees under RICO.

V. RECOMMENDATION

For the reasons stated above, the undersigned U.S. Magistrate Judge recommends that Plaintiff's Motion for Default Judgment be GRANTED IN PART and DENIED IN PART. The undersigned recommends that default judgment be entered against NCAI for violation of 18 U.S.C. § 1962(d) and for tortious interference, and that default judgment be entered against Mr.

21

Johnson for violation of 18 U.S.C. § 1962(c), for violation of 18 U.S.C. § 1962(d), and for tortious interference. However, the undersigned recommends that default judgment not be entered against NCAI or Mr. Johnson for fraud. In light of the recommendation that default judgment be entered due to violations of RICO, the undersigned also recommends Plaintiff be awarded $8,239,743.48 in damages jointly and severally from NCAI and Mr. Johnson.

## VI. NOTICE

The parties are advised that objections to this Report and Recommendation, pursuant to

28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within

fourteen (14) days of its service. Failure to object to this Report and Recommendation waives

appellate review of any judgment based on it.

The Clerk is directed to send copies of this Report and Recommendation to NCAI and

Mr. Johnson at the following addresses of record:

National Consumer Advocates, Inc.
9420 Reseda Blvd., #603
Northridge, CA  91324

Doug Johnson
8914 Griffith Road
Nashville, TN  37221

/s/
Theresa Carroll Buchanan
United States Magistrate Judge

THERESA CARROLL BUCHANAN
UNITED STATES MAGISTRATE JUDGE

July 26th, 2018
Alexandria, Virginia